UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

Plaintiff,

v.

James Holloway,

Defendant.

Case No. 24-mj-30456

MAG. ANTHONY P. PATTI

---

**Defendant's Emergency Renewed Motion for a Stay Pending Appeal of the Order to Commit the Defendant to Restore Competency (ECF No. 47)**

Defendant moves this Honorable Court to stay execution of the Court's order to restore him to competency pending a decision on his current appeal.

I certify, in compliance with E.D. Mich. LR 7.1(a)(2)(A), that there was a conference between the attorneys in which the movant explained the nature of the motion and its legal basis and requested but did not obtain concurrence in the relief sought.

OR

I certify, in compliance with E.D. Mich. LR 7.1(a)(2)(B), that despite reasonable and timely efforts to contact opposing counsel, via email messages, the movant was unable to conduct a conference.

1. This Court found Defendant James Holloway incompetent to stand trial and ordered him to be treated and restored to competence. (Order, ECF No. 47, PageID.172-174).
2. However, Holloway has always insisted that he is competent and has wanted to represent himself at trial. (Det. Hrg. Trans., ECF No. 56, PageID.321–324; and Comp. Hrg. Trans., R. 54, PageID.237-243).
3. Holloway has also always refused to be examined or evaluated by any psychological expert—even experts for the defense—after the Court found reasonable cause to believe Holloway was incompetent and ordered him committed for a mental health exam. (Order, ECF No. 11, PageID.35-37; and Comp. Hrg. Trans., ECF No. 54, PageID.235-236).
4. "A party must ordinarily move first in the district court for … a stay of the judgment or order of a district court pending appeal." Fed. R. App. P. 8(a)(1)(A).

5. Defendant moved the Court for a stay of proceedings pending appeal on January 15, 2026 (Motion, ECF No. 67), but the Court denied the motion on February 4, 2026. (Order, ECF No. 69, PageID.378–379).

6. The Court stated the following reason, in part, for denying a stay:

   Much of Defendant's motion is hinged on the "substantial interference with [a] person's liberty" involved in undergoing forced injection of medication. But this Court has not ordered forced medication, only treatment. In a recent status conference, **all counsel agreed that before forced medication could be ordered, additional court proceedings would be required**. [Order, ECF No. 69, PageID.378–379) (emphasis added) (citations omitted).]

7. The circumstances have recently changed after the Court denied Holloway's motion for a stay pending appeal.

8. On January 14, 2026 Holloway was finally admitted to the Federal Medical Center in Devens, Massachusetts for treatment and to determine whether he could be restored to competency.

9. On March 30, 2026, Holloway allegedly wrote three "threatening" and "insolent" emails to the prison's psychology department. (Exhibit A – Dr. Hamilton Incident Report 4/1/26, p. 1).

10. Holloway did not physically touch or assault anyone, he did not make any physically threatening behavior, and he was placed in a "Secure Mental Health Unit." *Id.* at 1.

11. Nevertheless, the psychiatric staff decided that Holloway was at "imminent risk for harming others due to poorly managed psychotic symptoms" and that he "met criteria for emergency psychiatric treatment." *Id.* at 2.

12. The next day, Holloway was injected with Haldol, Ativan, and Benadryl. *Id.* "Although Mr. Holloway expressed unwillingness to accept this medication, he was not actively resistant, and staff were able to administer the medication without incident." *Id.*

13. The prison psychiatry staff plan to conduct an internal hearing under *Washington v. Harper*, 494 U.S. 210, 110 S. Ct. 1028 (1990) and CFR, Title 28, Chapter V, Subchapter C, §549.46(a), "to determine if the ongoing use of involuntary psychiatric medication is warranted." (Ex. A, p. 3). The defense understands that the *Harper* hearing had not been conducted by April 2, 2026, the date of writing this motion.

14. The Sixth Circuit Court of Appeals has notified the parties that Holloway's interlocutory appeal will be submitted for review on June 3, 2026, and a decision will issue thereafter.

15. "The authority to grant stays has historically been justified by the perceived need 'to prevent irreparable injury to the parties or to the

public' pending review." *Nken v. Holder*, 556 U.S. 418, 432, 129 S. Ct. 1749, 1760 (2009) (citation omitted).

16. The factors considered when deciding whether to stay a court's order pending appeal are: "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991) (citation omitted).

17. "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Id.* (citation omitted).

18. The factors are "interrelated considerations," *id.* (citation omitted), meaning that a strong showing of irreparable injury may counterbalance a modest showing of likely success. *Id.* at 153-54 (observing that "more of one excuses less of the other") (citations omitted). That is the case here, where Holloway already has been injected with medications involuntarily.

19. "The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiffs will suffer absent the stay." *Id.* (citation omitted). However, a defendant seeking to stay a district court's judgment must "demonstrate more than the mere 'possibility' of success on the merits." *Id.* (citation omitted).

20. Courts consider three factors when evaluating the harm that will occur depending upon whether or not the stay is granted: "(1) the substantiality of the injury alleged; (2) the likelihood of its occurrence; and (3) the adequacy of the proof provided." *Id.* at 154 (citation omitted).

21. In *Washington v. Harper*, 494 U.S. 210, 229, 110 S. Ct. 1028, 108 L. Ed. 2d 178 (1990), the Supreme Court held that forcible injection of medication into the body of a non-consenting person "represents a substantial interference with that person's liberty."

22. Holloway has a First Amendment interest in avoiding forced medication, which may interfere with his ability to communicate ideas. See *Bee v. Greaves*, 744 F.2d 1387, 1394 (10th Cir. 1984) ("Antipsychotic drugs have the capacity to severely and even permanently affect an individual's ability to think and communicate.") (citation omitted).

23. The Supreme Court has held, in part, that "compelled treatment in the form of mandatory behavior modification programs" is a proper factor to be considered in determining whether a prisoner's liberty interest in personal security has been infringed." *Vitek v. Jones*, 445 U.S. 480, 492, 100 S. Ct. 1254, 1263 (1980) (citation omitted).

24. The issue of forced medication also implicates Holloway's Fifth Amendment liberty interest in being free from bodily intrusion. *Washington v. Harper*, 494 U.S. 210, 221-22, 110 S. Ct. 1028, 1036-37 (1990) (citations omitted). As noted in *Harper*, the purpose of those medications is to alter the chemical balance in a defendant's brain in order to restore his cognitive abilities. *Id.* at 229 (citation omitted). Although drug treatment may have beneficial results, the side effects can be severe and irreversible. *Id.* at 230 (citations omitted). Ten to 25% of patients taking antipsychotic medication develop tardive dyskinesia, which is characterized by uncontrollable movements of various muscles of the body and face. *Id.* (citations omitted).

25. Holloway's Sixth Amendment right to a fair trial is also at risk. In *Riggins v. Nevada*, 504 U.S. 127, 118 L. Ed. 2d 479, 112 S. Ct. 1810 (1992), Justice Kennedy stated the following in his concurring opinion: "By administering medication, the State may be creating a

prejudicial negative demeanor in the defendant—making him look nervous and restless, for example, or so calm or sedated as to appear bored, cold, unfeeling, and unresponsive . . . ." *Id.* at 143 (Kennedy, J., concurring) (citation omitted). The mind-altering effect of antipsychotic medication may also interfere with Holloway's right to effective assistance of counsel by rendering him unable or unwilling to assist in the preparation of his own defense. *Id.* at 144 (citations omitted).

26. These liberty interests cannot be restored later on appeal after a potential judgment.

27. There is a real likelihood that Holloway will prevail on the merits of his appeal because he was never actually evaluated by any psychological expert; he was just observed by one.

28. Holloway also testified at length during the competency hearing insisting that he was competent, worked various jobs, understood the nature of the charges, and directly asked to represent himself. (Det. Hrg. Trans., R. 56, Page ID # 321–324; and Comp. Hrg. Trans., R. 54, Page ID # 237-243).

29. Holloway has already been irreparably harmed, and the harm is continuing. He will be subjected to continued drug treatment involuntarily while he affirms his competence.

30. "The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiffs will suffer absent the stay." *Griepentrog*, 945 F.2d at 153–154 (citation omitted).

31. Holloway is currently suffering a substantial and irreparable injury of forced psychological and medical treatment, which means that Holloway does not have to show a strong probability of success on the merits of his appeal, he just has to "demonstrate more than the mere 'possibility' of success on the merits." *Id.* (citation omitted).

32. The government will not be prejudiced by a stay. "[D]elay alone is not a sufficient basis for establishing prejudice." *Invst Fin. Grp. v. Chem-Nuclear Sys.*, 815 F.2d 391, 398 (6th Cir. 1987) (citation omitted). "Rather, it must be shown that delay will 'result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion.'" *Id.* (citations omitted).

WHEREFORE, Defendant moves this Honorable Court to stay execution of the Court's Order to restore him to competency pending his interlocutory appeal.

Respectfully submitted,

/s/ *Mark H. Magidson*
MARK H. MAGIDSON (P25581)
Attorney for Defendant
The David Whitney Bldg.
One Park Avenue, Suite 1207
Detroit, MI 48226
(313) 963-4311
mmag100@aol.com

Dated: April 3, 2026

**Certificate of Service**

I certify that on April 3, 2026 the above Motion was filed with the Clerk of the Court using the CM/ECF system, which served the document(s) to the parties of record.

/s/ *Mark H. Magidson*
MARK H. MAGIDSON (P25581)
Attorney for Defendant

# Exhibit A

**U.S. Department of Justice**

Federal Bureau of Prisons

Federal Medical Center, Devens

*P.O. Box 880*
*Ayer, MA 01432*

April 1, 2026

The Honorable Anthony P. Patti
United States Magistrate Judge
Theodore Levin United States Courthouse
231 West Lafayette Boulevard, Room 673
Detroit, Michigan 48226

RE: James Nelson Holloway
Reg. No. 42991-511
Case No. 2:24-mj-30456

Dear Judge Patti,

In compliance with your Order dated August 19, 2025, and pursuant to Title 18, United States Code, § 4241(d), James Nelson Holloway was admitted to the Federal Medical Center in Devens, Massachusetts, on January 14, 2026, "for treatment in a suitable facility for a reasonable period of time, not to exceed 4 months, as is necessary to determine whether there is a substantial probability that in the foreseeable future, he will attain the capacity to permit the proceedings to go forward." Mr. Holloway's competency restoration period ends May 14, 2026, and I will submit a written report to the Court on or before May 28, 2026. This letter, however, is a notification to the Court regarding the emergency administration of psychiatric medication to Mr. Holloway.

On Monday, March 30, 2026, Mr. Holloway was placed in the Secure Mental Health Unit (SMHU) after accruing 3 incident reports in rapid succession for writing 3 separate emails in which he was accused of Threatening Bodily Harm. Two of these incident reports also accused Mr. Holloway of Being Insolent to a Staff Member. All 3 of these threatening emails were sent from Mr. Holloway to the DEV-InmatetoPsychologySvcs email box. These emails are typically reviewed by a member of the Psychology Department and then forwarded to the appropriate psychologist considering the nature of the request or to which psychologist the individual is assigned. Emails are not typically read in detail prior to forwarding. As such, I ultimately received Mr. Holloway's emails. In the interest of full disclosure, I wrote 2 of these incident reports and another psychologist wrote the third. What follows are narrative accounts copied from these 3 incident reports:

Incident Report 1 (written by another psychologist):

> On March 30, 2026, at approximately 9:15 AM, I was reviewing the inmate to psychology services inbox for electronic copouts. On March 29, 2026, at approximately

> 6:04 PM, [Mr. Holloway] submitted an electronic copout stating, "Continuance of report.. Do you really think someone who wrote these fucking filings is going to let some belligerent jack ass psychologist faggot into their life in mental retardation who doesn't know shit.. You don't know anything. I'm going to have every single person in any overt act killed for this moron. That's the law." [*sic*] Due to his statement about having people killed, I wrote him an incident report for threatening. Additionally, I perceive his derogatory statement about a psychologist staff member to be insolent.

Incident Report 2 (written by me):

> On March 30, 2026, at 9:36 am, I received several forwarded messages from the DEV-InmateToPsychologySvcs mailbox which were originally sent from [Mr. Holloway's] email account. One of these emails, sent Monday, March 20, 2026, at 9:23 am contained the following message: "...Go on stupid fuck. Fuck around and find out...Death fucking retard...And I will remove you from the fucking planet in your retaliations and ongoing harm in such. Then I will prosecute your fucking corpse retard...AND GET RID OF THE BIGGEST WASTE OF TAX PAYERS MONEY ON EARTH.. THESE FAGGOT ASS FRAUDS FACILITATING FOR THIS." [*sic*] Because this message was sent to the Psychology Services mailbox and contains a threat to kill, I interpreted this to be a threat on the life of any or all members of the Psychology Services Department. I interpreted the phrase, "Death fucking retard" to be insolence to any and all members of the Psychology Services Department.

Incident Report 3 (written by me):

> On March 30, 2026, at 9:00 am, I received several forwarded messages from the DEV-InmateToPsychologySvcs mailbox which were originally sent from [Mr. Holloway's] email account. One of these emails, sent Saturday, March 28, 2026, at 8:04 am contained the following message: "And even if I get forceable drugged.. We will play drunken Kung Fu.. And I will remove 1-5 of you of the few dozen that come to attack me every 2 weeks to a month.. Do the math.. 2 weeks is 25 x 5 removed.. thats 150 done.. And your whole facility replaced.. Or 12 times and I make sure I get a dozen each time.. If you never go to DHO.. and never give me supplies to write courts.. Every time you open the Shoot to the 'SHU'.. I will break your arms and necks every 6 hours.. Until you transfer me." [*sic*] Because this message was sent to the Psychology Services mailbox, references the act of being involuntarily medicated which is something any staff member at FMC Devens might need to assist with, and contains a threat to eliminate staff and break bones, I interpreted this as a threat to kill and otherwise inflict bodily harm on any or all members of FMC Devens staff complement.

Pursuant to CFR, Title 28, Chapter V, Subchapter C, §549.46(b)(1), Mr. Holloway was then referred for emergency treatment with psychiatric medication. That same day, on March 30, 2026, psychiatry staff evaluated Mr. Holloway and determined him to be at imminent risk for harming others due to poorly managed psychotic symptoms. Ultimately, psychiatry staff opined Mr. Holloway met criteria for emergency psychiatric treatment. The following day, Tuesday, March 31, 2026, Mr. Holloway was emergently medicated with injections of Haldol (an anti-psychotic medication, short-acting dose, 10 mg), Ativan (an anti-anxiety medication, 2 mg), and Benadryl (to prevent side effects, 50 mg). Although Mr. Holloway expressed unwillingness to accept this medication, he was not actively resistant, and staff were able to administer the medication without incident. He was medically assessed and closely observed after the medication was administered and he did not appear to experience any side effects.

Based on the criteria specified in *Washington v. Harper* (494 U.S. 210, 110 S. Ct. 1028, 1990) and CFR, Title 28, Chapter V, Subchapter C, §549.46(a), an individual may qualify for ongoing involuntary treatment with psychiatric medication if they are determined to be imminently dangerous to themselves, imminently dangerous to others, or gravely disabled after a due process hearing. Psychiatry staff plan to conduct said internal due process hearing to determine if the ongoing use of involuntary psychiatric medication is warranted for Mr. Holloway.

If ongoing psychiatric medication treatment is approved, it is my hope this will have a secondary benefit of supporting Mr. Holloway's competency restoration efforts.

I will submit a final report to the Court with an opinion as to his competence by May 28, 2026.

If we may be of further assistance to the Court in this matter, please contact me directly.

Sincerely,

DIANA HAMILTON

Digitally signed by DIANA HAMILTON
Date: 2026.04.01 16:40:13 -04'00'

Diana Hamilton, Psy.D.
Forensic Psychologist
dxhamilton@bop.gov
978-796-1116