**United States District Court**
**Eastern District of Michigan**
**Southern Division**

United States of America,

                                             Case No. 2:24-mj-30456

vs.

                                             Hon. Anthony P. Patti

James Nelson Holloway,

           Defendant.

_____/

**Government's Response to Holloway's Motion for a Stay of the**
**Order to Commit the Defendant to Restore Competency**
**(ECF No. 76)**

   After sending several threatening messages to harm and kill

individuals involved in his treatment, personnel at Federal Medical

Center (FMC) Devens determined, in their professional capacity, that

James Holloway posed an immediate threat of harm to himself and/or

others and that the administration of psychiatric medication was

necessary to address that psychiatric emergency. Federal law

authorizes the officials to do so in the face of a psychiatric emergency

without a judicial order, provided that, thereafter, Holloway has a non-

judicial administrative hearing at the FMC to determine the propriety

1

of future involuntary medication—a due-process hearing that Holloway admits will occur. *See* 28 C.F.R. § 549.46.

Holloway now seeks a stay of the Court's competency order to overrule the medical personnel who are treating him. Holloway's motion, however; (a) does not seriously address the psychiatric emergency that required the medication—his threats to physically harm and kill personnel at FMC Devens; (b) did not inform the Court that the compelled treatment thus far was a *one-time occurrence* and that no further medication will take place—absent an entirely new psychiatric emergency—until the *Harper* administrative due-process hearings and appeals conclude; and (c) provides no medical or scientific evidence that the administration of short-acting psychiatric medication (which starts wearing off after only 24 hours) had, or will have, any lasting effect on Holloway.

Accordingly, because:

- Holloway is highly unlikely to prevail on the merits of his appeal (which the Court already recognized);

2

- Holloway will have an administrative *Harper* hearing (and potential appeal) before any further psychiatric medication is administered, absent a new emergency;

- there is no medical evidence in the record that Holloway has been irreparably harmed by the emergency administration of one single dose of short-acting Haldol; and

- removing Holloway from treatment may exacerbate his mental illness and endanger the staff at FMC Devens,

this Court should deny his motion for a stay.

## I. Statement of facts

James Holloway emailed the U.S. Attorney's Office in Detroit, alleging that a federal magistrate judge had committed treason and that he would "sh[o]ot them in the head[.]" ECF No. 1, PageID.21. Two minutes later that same day, Holloway emailed again, "Yes, I'm going to kill [Magistrate Judge A] in a court of law." *Id.* Holloway's speech and behavior during the resulting criminal proceeding and related custody, along with his history, led this Court to conclude—in agreement with the sole expert to testify on the issue—that he was not competent to proceed. ECF No. 47. Holloway appealed this order to the Sixth Circuit,

3

which, after briefing, announced that a decision would issue without oral argument. ECF No. 49; *United States v. Holloway*, No. 25-1887 (6th Cir.), ECF No. 33.

As a result of this Court's competency order, Holloway has received treatment at the Federal Medical Center in Devens, Mass., to restore his competency. According to his treating psychologist, Dr. Diana Hamilton, as of last Friday, April 3, 2026, Holloway had sent approximately 72 e-mails to the psychology department inbox since his January 14 admission at the facility.

On March 20, Holloway e-mailed the facility's inbox for psychology, saying, "Go on stupid fuck. Fuck around and find out…Death fucking retard…And I will remove you from the fucking planet in your retaliations and ongoing harm. Then I will prosecute your fucking corpse[,] retard." *Holloway* (E.D. Mich.), ECF No. 76, PageID.415.

On March 28, Holloway messaged the same inbox that he would "remove 1-5 of you of the few dozen that come to attack me every 2 weeks to a month." *Id.* Holloway added that every time personnel opened the slot to his room to deliver food and medicine, "I will break

4

your arms and necks every 6 hours[.] Until you transfer me."

On March 29, Holloway again e-mailed the facility's psychology inbox, saying, "Do you really think someone who wrote these fucking filings is going to let some belligerent jack[ass] psychologist faggot into their life in mental retardation who doesn't know shit[?] You don't know anything. I'm going to have every single person in any overt act killed for this moron." *Id.*, PageID.414–15.

Because of these threats of direct and immediate physical harm and death, medical staff at FMC Devens concluded Holloway was "at imminent risk for harming others" and that he "met criteria for emergency psychiatric treatment." *Id.*, PageID.415. Devens personnel administered a small, short-acting dose of Haldol (an anti-psychotic medication), Ativan (to calm the patient), and Benadryl (to prevent side effects). *Id.* In a phone call with the government on April 3, 2026, Dr. Hamilton reported that FMC Devens staff indicated that the medication seemed to have a calming effect on Holloway. Dr. Hamilton also stated that, according to Holloway's psychiatrist, a short-acting dose of Haldol begins wearing off after only 24 hours and that she (Dr. Hamilton) successfully interacted with Holloway approximately 48 hours after the

5

administration of the emergency psychiatric medication and that he showed only routine short-term side effects (for which Holloway refused medication, such as Cogentin). Finally, Dr. Hamilton indicated that seclusion (without emergency medication) was not a viable alternative because Holloway threatened to harm FMC Devens personnel (breaking their arms and necks) when they opened the slot to deliver food in the SHU/SMHU (and, additionally, because he still needed to interact with personnel in other situations, such as recreation time and times when he wished to access the law library in the SMHU).

Because of the emergency treatment, the facility will schedule Holloway for a *Harper* hearing—see *Washington v. Harper,* 494 U.S. 210 (1990) and 28 C.F.R. § 549.46(a)—to determine "if the ongoing use of involuntary psychiatric medication is warranted for Mr. Holloway." ECF No. 76, PageID.416. And, importantly, per Dr. Hamilton, in the absence of a new emergency, the facility has no plans to administer any further psychiatric medication until the conclusion of the administrative *Harper* hearing (and any potential administrative appeal if further psychiatric medication is deemed warranted)—a fact that Dr. Hamilton communicated to defense counsel during a phone

call.[1] *See* 28 C.F.R. § 549.46(a). Dr. Hamilton expects the hearing to

occur in approximately 10 to14 days.

## II.   Overview of psychiatric emergencies and *Harper* hearings

A "psychiatric emergency" exists when a mentally ill or disabled

person at a federal prison facility "creates an immediate threat of:

> (A) Bodily harm to self or others;
> (B) Serious destruction of property affecting the security or orderly running of the institution; or
> (C) Extreme deterioration in personal functioning secondary to the mental illness or disorder.

28 C.F.R. § 549.46(b)(1)(ii). In such circumstances, personnel at the

Bureau of Prisons may administer psychiatric treatment only when the

medication "is an appropriate treatment" and alternatives "are not

available or indicated, or would not be effective." *Id.*, § 549.46(b)(1)(i).

Absent a psychiatric emergency, like the one that occurred here

because of Holloway's threats to harm and kill FMC Devens personnel,

bureau personnel cannot involuntarily administer psychiatric

medication without an administrative hearing. *Id.*, § 549.46 (first

---

[1] Thus, Holloway's statement that he currently will be "subjected to continued drug treatment involuntarily" (ECF No. 76, PageID.411) before the adjudication of due-process rights under *Harper* and 28 C.F.R. § 549.46 is just not true.

paragraph). When an inmate does not consent to receive psychiatric medication, the facility is to schedule an administrative hearing, with notice of at least 24 hours to the inmate. *Id.*, § 549.46(a)(2). Personnel cannot involuntarily deliver psychiatric medication before the hearing absent a psychiatric emergency. *Id.*, § 549.46(a)(1).

The hearing officer must be a psychiatrist, but cannot be one who is involved in the patient's treatment or diagnosis. *Id.*, § 549.46(a)(4). The patient may present evidence and is entitled to assistance from a staff representative in presenting evidence, and questioning witnesses. *Id.*, § 549.46(a)(3). After hearing from witnesses, including professionals involved in the treatment of the patient, the hearing officer determines whether involuntary administration "is necessary because, as a result of the mental illness or disorder, the inmate is dangerous to self or others, [or] poses a serious threat of damage to property affecting the security or orderly running of the institution[.]" *Id.*, § 549.46(a)(6)–(7). Unlike in a psychiatric emergency, the threat warranting involuntary psychiatric medication need not be "immediate[.]" *Compare* § 549.46(a)(7) with § 549.46(a)(b)(1)(ii).

8

The prisoner is entitled to a staff representative's assistance in appealing the decision to the BOP individual with supervisory authority over the mental-health division at the prison facility. *Id.*, § 549.46(a)(8)–(9). Involuntary administration of medication is disallowed pending the appeal, absent a psychiatric emergency. *Id.*, § 549.46(a)(9).

## III.  Standard

The party seeking a stay has the burden of demonstrating its need. *Clinton v. Jones*, 520 U.S. 681, 708 (1997). The four factors governing a court's analysis are:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Nken v. Holder*, 556 U.S. 418, 426 (2009).

## IV.  Discussion

As a prefatory matter, Holloway is not receiving involuntary psychiatric medication for the purpose of restoring his competency. "Only a Federal court of competent jurisdiction may order the involuntary administration of psychiatric medication for the sole purpose of restoring a person's competency to stand trial." 28 C.F.R. §

549.46(b)(2) (referring to what is commonly known as a *Sell*[2] hearing). Instead, Holloway has received involuntary medication—thus far in one single instance—for the purpose of addressing the real emergency danger he posed to staff and other prisoners at FMC Devens.

Consistent with due-process principles, Holloway will have an upcoming administrative hearing (and potential appeal) to determine the propriety for involuntary medication going forward. Indeed, absent a new psychiatric emergency, no further psychiatric medication will be given to Holloway without his consent. Staying this Court's *competency* order would harm Holloway and endanger others' safety. This Court

---

[2] *Sell v. United States*, 539 U.S. 166 (2003). *See also United States v. Berry*, 911 F.3d 354, 364 (6th Cir. 2018) ("There are two separate modes of analysis for involuntary medication: *Sell* analysis, for incompetent defendants (under which we analyze Berry); and *Harper* analysis, for * * * prisoners who pose a risk of harm to themselves or others."). It was a *Sell* hearing the parties were discussing during the status conference Holloway referenced (and bolded) in paragraph 6 of Holloway's motion to stay, ECF No. 76., PageID.405, not the use of medication to address a then-unforeseen psychiatric emergency that later became evident when Holloway threatened to kill and injure medical personnel at FMC Devens.

should deny Holloway's motion and avoid judicial intervention in his treatment.

Beginning with the first factor, Holloway has not made a strong showing that he is likely to succeed on the merits of his appeal of this Court's competency order. The evidence of his incompetence at the hearing was overwhelming. A forensic psychologist found him to be mentally ill, suffering from schizoaffective disorder, and explained how his untreated illness rendered him unable to assist in his defense. It is unlikely that the Sixth Circuit will find clear error in this Court's decision to credit that expert's opinion over Holloway's lay testimony. The Sixth Circuit's decision to process the appeal without oral argument further supports the conclusion that Holloway is unlikely to prevail. *Holloway* (6th Cir.), ECF No. 33. Holloway does not make the required "strong showing" here. *See also Holloway* (E.D. Mich), ECF No. 69, PageID.379 (where this Court previously concluded that Holloway is unlikely to prevail on appeal).

Second, Holloway cannot establish that he "*will* be irreparably injured absent a stay[.]" Holloway has cited cases from 1980, 1990, and

1992 and that say anti-psychotic medications generally *may* in some circumstances cause harmful side effects.

Dr. Hamilton, who has 20 years of experience as a psychologist, over 15 of which have involved care and treatment of inmates with serious mental illness, reported that she has never seen a *short*-term dose of Haldol have any lasting negative effect and she added that the worst outcome she observed was that the dose simply was ineffective at treating the patient. Regarding competency restoration, she also has never observed an antipsychotic medication render a defendant as less competent—only as either having no effect or an improving effect.

Holloway has not shown that a one- or even two-time administration of short-acting Haldol is likely to lead to such results, that it has caused serious side effects for him, and certainly has not shown that that it "will[.]" Holloway's motion does not, in fact, include or attach any medical evidence, or a declaration from any psychologist or other medical doctor, regarding the one-time short-acting dose of Haldol administered to Holloway to address the psychiatric emergency caused by Holloway's threats to kill and injure medical personnel at

12

FMC Devens. Instead, his motion consists only of speculation as to irreparable harm and, as such, is insufficient to satisfy his burden.

Holloway's motion also suggests that the emergency application of psychiatric medication was not necessary because Holloway had not yet "physically touch[ed] or assault[ed] anyone." ECF No. 76, PageID.405. But, the medical staff at FMC Devens need not wait for Holloway to act on his threats of harm and death before utilizing emergency psychiatric medication. A psychiatric emergency occurs when a person suffering from mental illness or disorder "creates an *imminent threat*" of bodily harm—which is exactly what Holloway's repeat messages to the psychology department did.

The third and fourth factors (substantial injury to the public if a stay is granted, and the public interest) weigh strongly against a stay. Staying the competency order necessarily would cause the cessation of treatment to restore his competency and the resumption of criminal proceedings of a person who is in no position to assist his counsel in the proceedings against him. Given the threats Holloway has made to a federal magistrate judge and the treating personnel at FMC Devens, there is every reason to believe his mental illness renders him

13

dangerous outside a controlled mental-health facility. Resuming criminal proceedings would necessitate housing him in a jail facility without the same level of mental-health treatment as FMC Devens or, possibly, releasing him on bail, endangering the public.

Lastly, Holloway appears to have filed this motion to make an end-run of the *Harper* decision. The *Harper* Court rejected the argument that the Due Process Clause requires a judicial hearing before a prisoner involuntarily receives psychiatric medication: "[W]e conclude that an inmate's interests are adequately protected, and perhaps better served, by allowing the decision to medicate to be made by medical professionals rather than a judge." 494 U.S. at 231. The *Harper* Court sustained a Washington state hearing procedure whose key feature, like the federal rule, is that none of the decisionmakers "may be involved in the inmate's current treatment or diagnosis." *Id.* at 233.

"[P]rison medical professionals [may] involuntarily administer antipsychotic drugs to a mentally ill prisoner so long as the officials 'make the decision under fair procedural mechanisms.'" *Toran v. Polavarapu*, No. 22-1813, 2024 U.S. App. LEXIS 25519, at *7 (6th Cir.

Oct. 9, 2024) (quoting *Harper*, 494 U.S. at 231). Holloway has identified no evidence to suggest FMC Devens is out of compliance with *Harper* and 28 C.F.R. § 549.46(b). More importantly, staying the competency order is an improper end-run around the administrative hearing process.

## V.     Conclusion

Wherefore, the government respectfully requests the Court deny Holloway's motion.

Respectfully submitted,

JEROME F. GORGON JR.
UNITED STATES ATTORNEY

/s/ Louis F. Meizlish
Assistant United States Attorney
211 W. Fort St., Suite 2001
Detroit, MI 48226
313-226-9745
louis.meizlish@usdoj.gov

Dated:     April 8, 2026

15

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorneys of record.

/s/ Louis F. Meizlish
Assistant United States Attorney
211 W. Fort St., Suite 2001
Detroit. MI 48226
313-226-9745
louis.meizlish@usdoj.gov

16