UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v.

                                          Case No. 24-30456
                                          Hon. Anthony P. Patti

JAMES NELSON HOLLOWAY,

      Defendant.
_____/

**OPINION AND ORDER DENYING EMERGENCY RENEWED MOTION FOR STAY PENDING APPEAL (ECF No. 76), DENYING MOTION FOR NEW DEFENSE COUNSEL (ECF No. 71) AND STRIKING MOTION TO PROCEED IN FORMA PAUPERIS (ECF No. 72)**

Defendant James Holloway has filed three motions: an emergency renewed motion for a stay pending appeal filed by his counsel; another motion for new counsel filed *in pro per*;  and, a motion to proceed *in forma pauperis* (IFP) filed *in pro per*.  The Court will address these one-at-a-time.

    **I.**    **Emergency Renewed Motion for Stay Pending Appeal (ECF No. 76)**

          **A. Background to the present motion**

Defendant previously filed a motion to stay the Court's order of commitment to restore competency because of, among other things, his "interest in avoiding forced medication, which may interfere with his ability to communicate ideas."

(ECF No. 67, PageID.370.)  In denying that motion, the Court pointed out that, "this Court has not ordered forced medication, only treatment" and noted that in "a recent status conference, all counsel agreed that before forced medication could be ordered, additional court proceedings would be required." (ECF No. 69, PageID.379.)

Since then, the Court and counsel were informed by a letter received from forensic psychologist Diana Hamilton, Psych. D., that the psychiatric staff at the federal BOP facility in which he is being treated determined that immediate treatment with psychotropic medication was necessitated by three separate incidents "in rapid succession" in which Defendant threatened staff with bodily harm, including threats to kill. (ECF No. 76.)  These are further detailed in the letter and included a threat to break the arms and necks of the people delivering food and medicine through his delivery slot. (*Id*., PageID.415.)  Defendant was determined to be "at immediate risk for harming others due to poorly managed psychotic symptoms" and consequently "referred [by psychiatry staff] for emergency treatment with psychiatric medication[,]" pursuant to "CFR, Title 28, Chapter V, Subchapter C, §549.46(b)(1)[.]" (*Id*., PageID.415.)  The following day Defendant was "emergently medicated with injections of Haldol (an anti-psychotic medication, short-acting dose, 10 mg), Ativan (an anti-anxiety medication, 2 mg),

and Benadryl (to prevent side effects, 50 mg)." (*Id.*)  Although Defendant "expressed his unwillingness to accept this medication, he was not actively resistant, and staff were able to administer the medication without incident." (*Id.*) He was assessed, "closely observed," and "did not appear to experience any side effects." (*Id.*)

Citing *Washington v. Harper*, 494 U.S. 210 (1990) and 28 C.F.R. §549.46(a). Dr. Hamilton noted that "an individual may qualify for ongoing involuntary treatment with psychiatric medication if they are determined to be immanently dangerous to themselves, imminently dangerous to others, or gravely disabled after a due process hearing." (*Id.*, PageID.416.)  Dr. Hamilton further reported that psychiatric staff plan to conduct an internal due process hearing "to determine if the ongoing use of involuntary psychiatric medication is warranted for Mr. Holloway." (*Id.*)  She concluded by stating that if ongoing medication treatment is approved, it may have "a *secondary benefit* of supporting Mr. Holloway's competency restoration efforts" and indicated that her final report as to her opinion on competency will be submitted by May 28, 2026. (*Id.*) (emphasis added).

### B. Due Process issues

#### 1. Medication to restore competency vs psychiatric emergencies

Defendant has now renewed his motion for a stay pending appeal on an emergency basis, essentially arguing that the situation has changed since the last denial of a stay because now forced medication has indeed been ordered. <u>But not by the Court</u>. Defendant incorrectly equates the "additional court proceedings" needed for forced medication *to restore competency*, as referenced in the Court's previous denial (ECF No. 69, PageID.379), with the involuntary medication that the treatment facility deemed it necessary to administer as a result of a "psychiatric emergency" *to prevent harm to Mr. Holloway or others, to prevent serious destruction of property of due to an extreme deterioration in personal functioning due to a mental illness or disorder*. *See* 28 C.F.R. §549.46(b)(1)(ii)(A)-(C) (defining psychiatric emergency). "[I]nvoluntary administration of drugs solely for trial competence purposes" requires additional judicial proceedings, as alluded to in the previous court order denying a stay, and as provided for in *Sell v. United States*, 539 U.S. 166, 180-183 (2003), *i.e.*, a "*Sell* hearing." In fact, the sub-section immediately following the one on psychiatric emergencies makes clear that:

Absent a psychiatric emergency as defined above, § 549.46(a) of this subpart does not apply to the involuntary administration of psychiatric medication for the sole purpose of restoring a person's competency to stand trial. Only a Federal court of competent jurisdiction may order the involuntary administration of psychiatric medication for the sole purpose of restoring a person's competency to stand trial.

28 CFR §549.46(b)(2).  To be clear – and to remove any ambiguity regarding the Court's prior statement (regarding treatment for restoration of competency) that "additional court proceedings would be required" before medication would be administered involuntarily (ECF No. 69, PageID.379.) – there are no present actions being taken to restore competency through involuntary medication.  Should that method of competency restoration treatment be under consideration in the future, the Court will hold a *Sell* hearing.

### 2.  *Harper* hearings

In contrast to that type of *judicial* proceeding to permit forced medication "for the sole purpose of restoring … competency" (a *Sell* hearing), the Supreme Court held in *Harper* that the Due Process Clause allows the State to "treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." 494 U.S. at 227.  In reversing the Washington Supreme Court, the Supreme Court of the United States found that the state court had erred when it

required a judicial hearing as a necessary prerequisite to administering involuntary treatment to prisoners. *Id*. at 228.   Instead, the Supreme Court concluded "that an inmate's interests are adequately protected, and perhaps better served, by allowing the decision to medicate to be made by medical professionals rather than a judge." 494 U.S. at 231.  These non-judicial, administrative due process protections and proceedings are provided for in ten distinct provisions of sub-section "a" of the regulation, beginning with the assurance that, "Unless an exception exists as provided in paragraph (b) of this section [pertaining to psychiatric emergencies], the inmate will not be involuntarily administered psychiatric medication before the hearing [*i.e.*, a *Harper* hearing]." 28 CFR §549.46.  These administrative procedures include, *inter alia*, 24-hour advanced notice to the inmate, being informed of the right to appear at the hearing, that the hearing be conducted by a psychiatrist "other than the attending psychiatrist," the presence of the treating/evaluating psychiatrist, the calling of reasonably available witnesses, a written report regarding the initial decision, etc.

Consistent with this, the Court clarified in its later *Sell* opinion that, "A court need not consider whether to allow forced medication for [rendering the defendant competent to stand trial], if forced medication is warranted for a *different* purpose, such as the purposes set out in *Harper* related to the individual's dangerousness, or

purposes related to the individual's own interests where refusal to take drugs puts his health gravely at risk." 539 U.S. 166 at 181–82 (emphasis in original).  This is so because, "the inquiry into whether medication is permissible, say, to render an individual nondangerous is usually more 'objective and manageable' than the inquiry into whether medication is permissible to render a defendant competent." *Id*. at 182 (quoting *Riggins v. Nevada*, 504 U.S. 127, 140 (1992) (Kennedy, J., concurring)).  And while the Supreme Court did not directly address the question of whether "a *Harper* hearing would be sufficient to medicate involuntarily a pretrial detainee on dangerousness grounds[,]" Courts of Appeals across the Circuits "have considered the application of *Harper* in the pretrial detainee context [and have] made the same assumption." *United States v. Loughner*, 672 F.3d 731, 748 (9th Cir. 2012).  That includes the Sixth Circuit. *See Thompson v. Bell*, 580 F.3d 423, 447 (2009) ("Guided by *Sell*, this Court now applies the four-part *Sell* standard when the involuntary medication is requested to restore competency to a pretrial detainee and the pretrial detainee is not a danger to himself or others, but this Court applies the *Harper* standard if he does pose a danger to himself or others.") (citing *United States v. Green*, 532 F.3d 538, 545 & n.5 (6th Cir. 2008)).

In the instant matter, it is undisputed that Defendant has been afforded a *Harper* due process hearing, consistent with 28 C.F.R. § 549.43.  *See United States*

7

*v. Brooks*, 750 F.3d 1090, 1093 (9th Cir. 2014) (equating an "internal administrative hearing pursuant to 28 U.S.C. § 549.43 as a *Harper* hearing). *See also Toran v. Polavarapu*, No. 22-1813, 2024 U.S. App. LEXIS 25519, at *7 (6th Cir. 2024) (Due Process Clause requirements met under *Harper* where "prison officials in fact provided him with that requisite process, including notice, a hearing, the right to cross-examine witnesses, and the right to appeal). The Court is satisfied that the BOP treatment facility has acted within its authority and provided the requisite due process at this juncture. Defendant is not entitled to a *Sell* hearing at this time, as there has been no move toward forced medication "for the sole purpose of restoring [Holloway's] competency to stand trial." 28 CFR §549.46(b)(2).

### C.  Stay factors

The Court considers four factors in deciding whether to issue a stay pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). Applying these factors here, the Court concludes that the emergency renewed motion for a stay will be **DENIED**.

### 1.  Likelihood of success on the merits

The Court agrees with the Government's assessment that the evidence of Defendant's incompetence has been "overwhelming" (ECF No. 79, PageID.429), as is well documented throughout these proceedings, beginning with his detention hearing, as displayed at several subsequent hearings, as shown through his refusals to communicate with his counsel, hired expert, family and BOP examiners, as opined by a qualified expert at his competency hearing and as further shown through his escalating, erratic and threatening behavior.  Although it is ultimately for the Court of Appeals to say, this Court believes that the likelihood of Defendant being successful on the merits of his present appeal is low.

### 2.  Irreparable harm

Based on what is before the Court, it appears that Defendant has thus far been medicated on a one-time basis, although further medication could potentially be administered if Defendant again presents a psychiatric emergency, as defined by 28 C.F.R. § 549.46(b)(1)(ii).  It is uncertain whether the due process (Harper) hearing will result in approval of ongoing, involuntary medication treatment.  The Government  proffers that Dr. Hamilton "has never seen a short-term dose of

Haldol have any lasting negative effect and she added that the worst outcome she observed was that the dose simply was ineffective at treating the patient." (ECF No. 79, PageID.430.)  Moreover, "she also has never observed an antipsychotic medication render a defendant as less competent—only as either having no effect or an improving effect." (*Id*.)  Defendant's argument as to the ill effects of the medication at issue is highly speculative and devoid of supporting evidence.  And contrary to Defendant's suggestion, the BOP did not need to wait until Defendant actually battered or harmed someone to take action, so long as the threat of doing so appeared imminent.  Furthermore, a "psychiatric emergency" need not involve any threats of harm to self or others, but may be based solely on an "immediate threat" of "[s]erious destruction of property affecting the security or orderly running of the institution[,]" or, as may be more pertinent here, "[e]xtreme deterioration in personal functioning secondary to the mental illness or disorder." 28 C.F.R. § 46(b)(1)(ii).  Moreover, staying his restorative treatment pending appeal is more likely to cause *further* deterioration in Defendant's condition, rather than improvement or stasis.  This factor disfavors imposition of a stay.

### 3.  Other parties and the public interest

Defendant argues that ongoing treatment to restore competency in the absence of a stay may lead to further medication and "may also interfere with

Holloway's right to effective assistance of counsel by rendering him unable or unwilling to assist in the preparation of his own defense" due to the "mind altering effect of antipsychotic medication[,]"  thus putting his "Sixth Amendment right to a fair trial at risk." (ECF No. 76, PageID.409-410.)  Unfortunately, the record clearly shows that Holloway's unwillingness to communicate with his own counsel or even to be examined for competency purposes by an expert retained by his counsel (about both of which the Court made repeated inquiry at various status conferences) has been the *status quo*.  Furthermore, the Court agrees that staying his competency restoration and placing him back in the general pretrial detention population, such as in a local jail, is likely to have extremely negative effects on Defendant and will likely pose a danger to other inmates as well as to himself.  The Court reiterates and stands by what it said in its last order denying a stay:

> Defendant is not competent and requires restoration in order to proceed with his case. The sooner his competency can be restored, the quicker he can get to trial, which is in his interest and the interests of the public. Now that Defendant has arrived at a treatment facility and is presumably undergoing restoration therapy, the Court believes that his own best interest and that of the public favors continuation, not suspension.

(ECF No. 69, PageID.379.)  The emergency renewed motion for a stay pending appeal (ECF No. 76) is **DENIED**.

11

## II.      Motion for New Defense Counsel (ECF No. 71)

For the reasons stated in its previous order denying Defendant's *in pro per* motion for new counsel and as explained above, the motion for new defense counsel is **DENIED**.  As the Court observed previously and as still applies today, "Defendant's counsel is actively protecting his rights before the Court and is presently pursuing both an appeal and a stay on his behalf." (ECF No. 69, PageID.378.)  In fact, contrary to Defendant's insistence that his counsel is doing nothing on his behalf, and as addressed immediately above, defense counsel has twice pursued stays of his competency restoration treatment on Defendant's behalf (ECF Nos. 67, 76) and is currently pursuing an appeal on his behalf.  *See* Sixth Circuit Court of Appeals Case No. 25-1887.  Recently, the Court of Appeals denied a motion requesting, *inter alia*, the same relief. (ECF No. 81 herein.) Although, in contrast to his last such motion, his present motion seems to be more interested in obtaining new counsel than in representing himself while judged incompetent, his ability to recognize his own best interests remains seriously compromised and at issue, and the Court does not believe that it would be in his best interest to change horses midstream while competency issues remain pending. Current defense counsel has an extensive history with and knowledge of this case. And in contrast to Plaintiff's suggestion that his counsel does not make regular

contact with him, the record in this case shows that Defendant has shunned contact with anyone, including his own family, his retained expert, and BOP psychologists, as well as his own attorney.  Bringing in new counsel at this sensitive juncture would be more likely to compromise his position than enhance it.  And given the history thus far, the Court is fairly convinced that, absent restoration of his competency, Defendant would be unlikely to cooperate with, trust or be otherwise satisfied with any attorney the Court might appoint.  As this Court previously stated, "When Defendant's competence is hopefully restored, the Court can take up this issue again." (ECF No. 69, PageID.378.)

### III.    Motion to proceed in forma pauperis (ECF No. 72)

This motion is again filed *in pro per*.  As such, it is **STRICKEN** for the reasons previously stated by this Court. (*See* ECF No. 20, PageId.64 and various text-only orders, *passim*.)  Defendant may not pursue motions *in pro per* while represented by counsel.  Recently, the Court of Appeals denied a similar motion also filed *in pro per*, requesting, among other things, *in forma pauperis* status, also noting that defendant has appointed counsel. (ECF No. 81.)  The Court already recognized Defendant's indigency by appointing him counsel at the outset of these proceedings. (ECF No. 7.)  If counsel is pursuing an appeal on Defendant's behalf, presumably he has already taken whatever measures are necessary, if any, to assure

and preserve his client's *in forma pauperis* status for purposes of appeal.

It is **SO ORDERED**.

ANTHONY P. PATTI
UNITED STATES MAGISTRATE JUDGE

Dated:  April 23, 2026